# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| FRANK DANIEL KRESOCK, Jr., | Case No. 0:16-bk-08631-BMW |
| Debtor. | |
| ILENE J. LASHINSKY, UNITED STATES TRUSTEE, | Adversary Case No. 0:19-ap-00091-BMW |
| Plaintiff, | **MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| FRANK DANIEL KRESOCK, Jr., | |
| Defendant. | |

This matter came before the Court pursuant to the *United States Trustee Motion for Summary Judgment* (the "MSJ") (Dkt. 74)[1] and *Statement of Undisputed Facts in Support of United States Trustee's Motion for Summary Judgment* (the "SOF") (Dkt. 75) filed by the United States Trustee for the District of Arizona (the "UST") on October 21, 2019; the *Debtor's Response to United States Trustee's Motion for Summary Judgment* (the "Response") (Dkt. 88) filed by the Debtor/Defendant, Frank Daniel Kresock, Jr. ("Dr. Kresock"), on November 20, 2019; the *United States Trustee's Reply to Debtor's Response to the United States Trustee's Motion for Summary Judgment* (the "Reply") (Dkt. 98) and *United States Trustee's Response to*

---

[1] Unless otherwise indicated, all references to the docket are references to the docket in this adversary proceeding.

*the Debtor's Supplemental Statement of Facts in his Response to the Motion for Summary Judgment* (Dkt. 99) filed by the UST on December 4, 2019; and all filings in the record related thereto that the Court has decided in its discretion to consider pursuant to Federal Rule of Civil Procedure 56(c)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7056.[2]

The Court held oral arguments on the MSJ on July 23, 2020, at the conclusion of which the Court took this matter under advisement.[3]

The Court now issues its ruling.

## I. <u>Jurisdiction</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(J) and 28 U.S.C. § 1334. The parties have acknowledged that the Court has jurisdiction over this proceeding, and both parties are deemed to consent to this Court's authority to enter final orders or judgments pursuant to Rules 7008-1 and 7012-1 of the Local Rules of Bankruptcy Procedure for the District of Arizona. (*See* Dkt. 1 at ¶¶ 1-3; Dkt. 43 at ¶¶ 1-3).

## II. <u>Facts & Procedural Background</u>

### A. Background

Dr. Kresock is a cardiologist in Parker, Arizona, who has operated his medical practice under the name of The Cardiovascular Center, LLC (the "CVC") from 2009 to the present. (SOF at ¶¶ 1-2;[4] Admin. Dkt. 701 at 3-4).[5] The CVC is 100% owned by Dr. Kresock. (SOF at ¶ 2; Admin. Dkt. 173 at 14).

On July 27, 2016 (the "Petition Date"), Dr. Kresock filed for relief under chapter 11 of the Bankruptcy Code. (SOF at ¶ 3; Admin. Dkt. 1). When Dr. Kresock filed his petition, he was represented by bankruptcy counsel Mark Giunta. (SOF at ¶ 3; Admin. Dkt. 1). The Court granted Mr. Giunta's request to withdraw as counsel for Dr. Kresock on November 18, 2016. (SOF at

---

[2] Pursuant to Federal Rule of Bankruptcy Procedure 1001, the Court will construe, administer, and employ this rule in a way that "secure[s] the just, speedy, and inexpensive determination" of this proceeding.

[3] The Court also instructed counsel for the UST to file official versions of the unofficial transcripts attached to the SOF. The official transcripts are filed at Dkt. 140.

[4] Citations to "SOF" are citations to the SOF filed at Dkt. 75 and the exhibits attached thereto.

[5] References to "Admin. Dkt." are references to the administrative docket in Dr. Kresock's case, case number 0:16-bk-08631-BMW.

¶ 24; Admin. Dkt. 66). Richard Drake subsequently represented Dr. Kresock for a short period of time, as did Dean Dinner. (*See* SOF at ¶¶ 29, 31; Admin. Dkt. 127; Admin. Dkt. 138; Admin. Dkt. 238). Dr. Kresock has chosen to represent himself in these proceedings since approximately May 5, 2017.

On March 11, 2019, the UST filed the *United States Trustee's Complaint to Deny Debtor's Discharge Under 11 U.S.C. § 727* (the "Complaint") which commenced this adversary proceeding. (SOF at ¶ 179; Dkt. 1).

On June 20, 2019, Dr. Kresock filed his answer, after the Court set aside the default judgment which was entered due to Dr. Kresock's failure to timely respond to the Complaint. (SOF at ¶¶ 180-184; Dkt. 13; Dkt. 32; Dkt. 43). In his answer to the Complaint, Dr. Kresock admits that he is a highly educated professional who engaged in complex transactions, and that in light of his education and business history, he had the sophistication and forethought to maintain proper documentation of his financial affairs. (SOF at ¶¶ 53-54; Dkt. 1 at ¶¶ 57-58; Dkt. 43 at ¶¶ 57, 58).

On October 21, 2019, the UST filed the MSJ and SOF. In the MSJ, the UST moves the Court to enter summary judgment against Dr. Kresock as to Count Two, the UST's § 727(a)(3) claim,[6] and as to Count Three, the UST's § 727(a)(4) claim.

The UST argues that summary judgment is appropriate with respect to Count Two on the basis that Dr. Kresock: (1) failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained; and (2) falsified a judgment and submitted it to this Court in order to conceal his financial condition and business transactions.

The UST argues that summary judgment is appropriate with respect to Count Three on the basis that Dr. Kresock knowingly made numerous material false statements and omissions under oath pertaining to his financial affairs with an intent to deceive his creditors, the UST, the chapter 7 trustee, and the Court, and actively tried to conceal the truth from interested parties.

On November 20, 2019, Dr. Kresock filed the Response, in which he asserts that: (1) he

---

[6] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

or third parties he hired kept and/or preserved recorded information from which his financial condition or business transactions might be ascertained, such that either he met his affirmative duty under § 727(a)(3), or his acts or failures were justified under the circumstances; (2) he did not falsify the judgment cited by the UST; and (3) he did not act with the requisite intent. Dr. Kresock also asserts an advice of counsel defense.[7]

Dr. Kresock did not file a separate controverting statement of facts in support of his position, as is required in this District.[8] *See* Local Rule 9013-1(g).

The MSJ was fully briefed on December 4, 2019.[9]

**B.    Information Regarding Financial Condition**

As of the Petition Date, Dr. Kresock had not filed tax returns for tax years 2010 through 2015. (Admin. Dkt. 701 at 3). In his original schedules, which were filed on the Petition Date, Dr. Kresock did not schedule any income tax debt for tax years 2010 through 2015.[10] (*See* Admin. Dkt. 1).

On July 28, 2016, shortly after the Petition Date, Lorraine Korklan, an analyst employed with the Office of the UST, sent correspondence to Mr. Giunta requesting that Dr. Kresock provide copies of his 2014 and 2015 tax returns and most recent financial statements, which requests are standard requests made by the UST's Office in chapter 11 cases. (SOF at ¶¶ 7-8; SOF, Ex. B at ¶¶ 3-4).

None of the requested documents were submitted to the UST's Office by the August 11, 2016 deadline. (SOF at ¶ 9; SOF, Ex. B at ¶ 5). The deadline for Dr. Kresock to provide the requested documents was thereafter extended to August 26, 2016. (SOF at ¶ 11; SOF, Ex. B at

---

[7] In addition, Dr. Kresock attempts to relitigate matters already adjudicated by final order or judgment, which relitigation attempts are barred by preclusion doctrine.

[8] That being said, the Court has considered the factual allegations contained in the Response for purposes of this matter.

[9] Oral arguments on the MSJ were originally set for February 25, 2020, but were continued from time to time at the request of Dr. Kresock.

[10] Dr. Kresock originally scheduled the Internal Revenue Service ("IRS") as holding a disputed claim pertaining to debt for tax year 2008 and the Arizona Department of Revenue ("ADOR") as holding a disputed claim pertaining to debt for tax years 2002-2008. (Admin. Dkt. 1 at 1 & 47). Dr. Kresock later amended his schedules to list the IRS as holding disputed claims in the approximate amount of $80,000 pertaining to debt for tax years 2010-2012 and 2014-2016, and the ADOR as holding a disputed claim for debt incurred during tax years outside the relevant 2010-2015 window. (*See* Admin. Dkt. 173).

¶ 7).

The requested documents were not provided by the extended deadline. (SOF at ¶ 13; SOF, Ex. B at ¶ 9). As a result, the initial debtor interview was cancelled and the § 341 meeting of creditors was continued. (SOF at ¶¶ 13-14; SOF, Ex. B at ¶¶ 9-10).

On September 8, 2016, the UST filed a *United States Trustee's Motion for Order Compelling Debtor to Provide Requested Information, or in the Alternative, to Convert or Dismiss this Case* (the "UST Motion to Compel"). (SOF at ¶ 15; Admin. Dkt. 21). Thereafter, Dr. Kresock provided the UST with some of the requested information, but did not provide the requested tax returns or financial statements. (*See* SOF at ¶ 16; SOF, Ex. B at ¶ 12).

On September 26, 2016, the UST conducted a telephonic initial debtor interview with Mr. Giunta and Dr. Kresock. (SOF at ¶ 18; SOF, Ex. B at ¶ 13). Dr. Kresock did not provide the requested tax returns to the UST's Office by the time of the initial debtor interview, and when asked about them, Dr. Kresock represented to Ms. Korklan that he was required to pay taxes at the statutory rate but was not required to file tax returns. (SOF at ¶ 18; SOF, Ex. B at ¶ 13).

Additional weeks passed, and Dr. Kresock still failed to provide the UST with the requested tax returns, financial statements, and other documents necessary for the administration of his case. (SOF at ¶ 19; SOF, Ex. B at ¶ 14).

On November 17, 2016, the Court held a hearing on the UST Motion to Compel, at which time the Court granted the UST Motion to Compel and ordered Dr. Kresock to provide all of the requested documents within 30 days. (SOF at ¶ 23; Admin. Dkt. 70 at 2). The Court authorized the UST to upload an order converting the case to chapter 7 if Dr. Kresock failed to meet this deadline. (SOF at ¶ 23; Admin. Dkt. 70 at 2).

Dr. Kresock failed to timely provide the required documents to the UST. (SOF at ¶ 25). As a result, the UST lodged a proposed form of order converting the case to chapter 7. (SOF at ¶ 25; Admin. Dkt. 88). On December 27, 2016, before a conversion order was entered, Dr. Kresock filed a response in which he objected to conversion and requested an additional 30 days to provide the missing documents to the UST. (SOF at ¶ 26; Admin. Dkt. 93). The extended deadline proposed by Dr. Kresock passed, and on January 25, 2017, the UST filed a reply listing

documents that Dr. Kresock had failed to provide. (SOF at ¶ 27; Admin. Dkt. 103).

On January 25, 2017, the ADOR filed a joinder in the UST Motion to Compel, in which the ADOR represented that Dr. Kresock had still not filed his state income tax returns for tax years 2010 through 2015. (SOF at ¶ 28; Admin. Dkt. 102).

On January 26, 2017, the Court ordered that Dr. Kresock's bankruptcy case be converted to chapter 7 based on Dr. Kresock's failure to comply with the Court's order granting the UST Motion to Compel, failure to timely file required reports, failure to timely provide information reasonably requested by the UST, and failure to timely file tax returns. (SOF at ¶ 30; Admin. Dkt. 106).

On or about February 13, 2017, Dr. Kresock filed his federal tax returns for tax years 2010 through 2015. (Admin. Dkt. 701 at 20).

On February 27, 2017, the ADOR filed an application for a Rule 2004 examination, in which the ADOR sought various books, documents, records, and papers relating to Dr. Kresock's financial condition and business transactions. (SOF at ¶ 33; Admin. Dkt. 165). Also on February 27, 2017, the Court entered an order granting the ADOR's Rule 2004 application (the "ADOR 2004 Order"). (SOF at ¶ 34; Admin. Dkt. 167).

On March 1, 2017, the ADOR served the ADOR 2004 Order on Dr. Kresock via certified and regular mail, with a cover letter that set March 29, 2017 as the deadline to provide the requested documents. (SOF at ¶ 35; Admin. Dkt. 274 at Ex. B). On March 29, 2017, Dr. Kresock requested a two-week extension of time to produce the outstanding documents, which extension was agreed to by the ADOR. (SOF at ¶ 37; Admin. Dkt. 274 at Ex. C). Dr. Kresock failed to produce any documents by this extended deadline. (SOF at ¶ 38; *see* Admin. Dkt. 274 at Ex. D). At the request of Dr. Kresock's counsel, the ADOR agreed to an additional 10-day extension of time. (SOF at ¶ 38; Admin. Dkt. 274 at Ex. D).

On May 11, 2017, after having not received the documents listed on Exhibit A of the ADOR 2004 Order, the ADOR set June 1, 2017 as a final deadline for Dr. Kresock to respond to the ADOR 2004 Order. (SOF at ¶ 42; Admin. Dkt. 274 at Ex. E). The ADOR reported that Dr. Kresock failed to provide any requested documents by the final deadline. (SOF at ¶ 43; Admin.

Dkt. 274).

On June 14, 2017, the ADOR filed a *Motion to Compel Production of Documents and Compliance with Discovery Obligations* (the "ADOR Motion to Compel"). (SOF at ¶ 44; Admin. Dkt. 274).

On June 22, 2017, the Court held a hearing on the ADOR Motion to Compel, at which time the Court ordered Dr. Kresock to provide all requested documents to the ADOR on or before August 7, 2017, or alternatively, to the extent he believed the information had been provided or was unavailable to him, to file a signed declaration to that effect. (SOF at ¶ 45; Admin. Dkt. 324).

Thereafter, the ADOR acknowledged receiving some documents, but asserted that Dr. Kresock's production was deficient. (SOF at ¶ 47; *see* Admin. Dkt. 355). On August 23, 2017, the ADOR filed a notice of noncompliance. (SOF at ¶ 49; Admin. Dkt. 355)

On August 31, 2017, the Court held a continued hearing on the ADOR Motion to Compel, at which time the Court found that Dr. Kresock had failed to comply with the ADOR 2004 Order and the Court ordered Dr. Kresock to either fully comply with the ADOR 2004 Order by September 11, 2017, or file a declaration indicating why the requested information was unavailable to him. (SOF at ¶ 50; Admin. Dkt. 395 at 7).

The ADOR 2004 Order required Dr. Kresock to, among other things:

> 5. Produce a journal and/or spreadsheet of any Transfers[11] made by [the CVC] to or on behalf of Janine Marie Smith[12] with an explanation of each Transfer for the [period of time between January 1, 2010 and December 31, 2015].
>
> 6. Produce a journal and/or spreadsheet of any Transfers made by [Dr. Kresock] to or on behalf of Janine Marie Smith with an explanation of each Transfer for the [period of time between January 1, 2010 and December 31, 2015].
>
> 7. Produce a journal and/or spreadsheet of any Transfers made by [the

---

[11] Pursuant to the ADOR 2004 Order, "'Transfer' [was] intended to have the broadest possible meaning under Fed. R. Bank. P. 2004 and 9016 and include[d] every mode, direct or indirect, absolute or conditional, tangible or intangible, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and include[d] payment of money, release, lease, creation of a lien or other encumbrance." (Admin. Dkt. 167 at 4).

[12] Janine Marie Smith is Dr. Kresock's girlfriend.

CVC] to or on behalf of [Dr. Kresock] with an explanation of each Transfer for the [period of time between January 1, 2010 and December 31, 2015].

(SOF at ¶ 51; Admin. Dkt. 167).

On September 11, 2017, Dr. Kresock filed his *Response to Request for Documents as Outlined by Christopher J. Dylla Assistant Attorney General* (the "Declaration") (Dkt. 388). In the Declaration, in response to the requests numbered 5, 6, and 7 listed above, Dr. Kresock declared as follows:

**Document No. 5**
I do not keep a spreadsheet of transfers on behalf of Janine Smith. Transfers made on her behalf would be identified by check.

**Document No. 6**
I do not have a journal or spreadsheet of transfers made to Janine Smith, therefore I cannot produce it.

**Document No. 7**
I do not have a journal or spreadsheet of transfers made to myself. Therefore, I cannot produce it.

(SOF at ¶ 52; Admin. Dkt. 388 at 2).

On October 24, 2017, the ADOR filed a status report, according to which Dr. Kresock had not complied with all outstanding document production requests. (SOF at ¶ 56; Admin. Dkt. 417).

On October 26, 2017, the Court held a continued hearing on the ADOR Motion to Compel, at which time the Court asked Dr. Kresock why he had not complied with the ADOR 2004 Order. Dr. Kresock represented to the Court that he was not required to file tax returns and that he could not readily obtain certain bank statements. (SOF at ¶ 57; Dkt. 140, Ex. 2 at 15-16). The Court ordered Dr. Kresock to provide proof that he had requested the bank statements at issue at the next hearing or face sanctions. (SOF at ¶ 58; Dkt. 140, Ex. 2 at 19).

Meanwhile, the IRS initiated discovery in order to verify the income and expenses set forth in the tax returns filed by Dr. Kresock. (SOF at ¶ 39; *see, e.g.*, Admin. Dkt. 338; Admin. Dkt. 339).

During the course of discovery, the IRS asked Dr. Kresock to provide books, records, and

documents to substantiate his income and expenses for the period of time between 2010 and 2015. (SOF at ¶ 40; *see* Admin. Dkt. 429). According to the IRS, it sent Dr. Kresock three copies of its request for production. (*See* SOF at ¶ 60; Admin. Dkt. 429). Dr. Kresock did not respond to the IRS's document requests. (*See* SOF at ¶ 63).

On December 15, 2017, the IRS filed a motion to compel Dr. Kresock to respond to its request for production (the "IRS Motion to Compel"). (SOF at ¶ 64; Admin. Dkt. 429). On January 18, 2018, the Court held a hearing on the IRS Motion to Compel. Dr. Kresock failed to appear. (SOF at ¶ 66; Admin. Dkt. 459). At the hearing, the Court granted the IRS Motion to Compel and ordered Dr. Kresock to comply with the request for production no later than January 31, 2018, or face sanctions (the "Order Granting IRS Motion to Compel"). (SOF at ¶ 66; Admin. Dkt. 459; Admin. Dkt. 465).

On January 29, 2018, the ADOR filed a notice, in which the ADOR represented that Dr. Kresock had not produced certain bank statements or provided any business records from the CVC, but that because the IRS was in the final stages of completing its audit, the ADOR had decided to rely on the IRS's audit in an effort to conserve the resources of the government and the Court. (SOF at ¶ 69; Admin. Dkt. 464).

On January 31, 2018, Dr. Kresock filed a response to the IRS Motion to Compel, attached to which were various documents. (Admin. Dkt. 468; *see also* SOF at ¶ 68). On March 12, 2018, Dr. Kresock filed a supplemental response to the IRS Motion to Compel, which referred to additional documents. (Admin. Dkt. 511; *see also* SOF at ¶ 68).

During a March 15, 2018 hearing on Dr. Kresock's objection to the proof of claim filed by the IRS, the IRS reported that Dr. Kresock had produced a box of documents in response to the Order Granting IRS Motion to Compel. (SOF at ¶ 70; Admin. Dkt. 544 at 32-33). However, Dr. Kresock has admitted that in order to complete its audit, the IRS was required to subpoena third parties in order to obtain financial information necessary to recreate his financial records. (SOF at ¶ 73; Dkt. 1 at ¶ 60; Dkt. 43 at ¶ 60).

On February 28, 2018, the IRS conducted a deposition of Dr. Kresock (the "February 2018 Deposition"), during which Dr. Kresock invoked his Fifth Amendment right against self-

incrimination in response to almost every question. (SOF at ¶ 75; *see* Admin. Dkt. 671 at Ex. 49).

Ultimately, the IRS determined that additional tax was due from Dr. Kresock, and the IRS filed an amended proof of claim in the amount of $2,293,059.32. (SOF at ¶ 81; Proof of Claim 1-6). Thereafter, the IRS filed a motion for summary judgment in which it asked the Court to reduce Dr. Kresock's federal tax liabilities to judgment in the amount of the amended proof of claim. (SOF at ¶ 83; Admin. Dkt. 666).

On February 6, 2019, the Court entered a memorandum decision and a judgment (collectively, the "IRS Ruling") in favor of the IRS, allowing the IRS's amended claim in the amount of $2,293,059.32. (SOF at ¶ 86; Admin. Dkt. 701; Admin. Dkt. 702). The IRS Ruling rendered the IRS the largest creditor in Dr. Kresock's case.

In the IRS Ruling, the Court found that Dr. Kresock had not cooperated during the discovery process, thus requiring the issuance of subpoenas to third parties. (Admin. Dkt. 701 at 4). The Court also found that Dr. Kresock had not substantiated many of his business expenses or kept good records. (Admin. Dkt. 701 at 9, 19). Further, the Court found that, due to the extent of the substantial understatements of tax in the returns filed by Dr. Kresock, it was appropriate for the IRS to assess a 20% accuracy penalty. (Admin. Dkt. 701 at 20-21).

### C.    Falsified Documents

#### 1.    The Criminal Judgment

On no fewer than 8 occasions, and on at least 1 occasion under oath, Dr. Kresock, either through counsel or acting on his own behalf, has represented to this Court, the UST, and/or creditors that he was not required to file tax returns as a condition of his probation.[13] (SOF at ¶¶ 90-96, 100-102; SOF, Ex. B at ¶¶ 8, 13; Admin. Dkt. 169 at n.2; Admin. Dkt. 210 at 2; Admin. Dkt. 671, Ex. 42 at 15-16; Dkt. 88; Dkt. 140, Ex. 1 at 24; Dkt. 140, Ex. 2 at 15).

On April 5, 2017, Dr. Kresock filed a copy of a portion of the document that purported to relieve him of his obligation to file tax returns, which excerpt originated from the *Judgment in a*

---

[13] In 2004, Dr. Kresock was convicted on 3 felony counts of aiding and assisting the filing of a false corporate income tax return, and 3 felony counts of attempted income tax evasion. The terms of probation at issue stem from this conviction.

*Criminal Case* (the "Criminal Judgment") entered against Dr. Kresock pre-petition.[14] (SOF at ¶ 96; Admin. Dkt. 212 at Ex. A).

The portion of the Criminal Judgment filed by Dr. Kresock purports to list 6 conditions of supervision, numbered 14 through 19. (Admin. Dkt. 212 at Ex. A). Dr. Kresock cites to condition number 19 ("Condition 19") in support of his position that he was not required to file tax returns. Condition 19 provides: "the defendant is to pay federal and state income tax at the estimated statutory rate but is not required to file a federal or state income tax return."

The UST asserts that Condition 19 was added by Dr. Kresock. As an initial matter, Condition 19 is in a type font that differs from the type font of the other conditions on the page. Further, the semi-colon at the end of condition number 18 appears to have been handwritten, and Condition 19 is the only condition that uses "is to" rather than "shall" to convey a directive.

Scott Reardon, Dr. Kresock's probation officer, who reviewed the Criminal Judgment with Dr. Kresock and signed it, has reviewed the excerpt of the Criminal Judgment Dr. Kresock filed with the Court and has submitted that it was falsified. (SOF at ¶¶ 111, 113-114; SOF, Ex. D at ¶¶ 12-13). The certified copy of the Criminal Judgment that has been submitted to the Court as part of the declaration submitted by Mr. Reardon does not contain Condition 19. (SOF at ¶ 118; SOF, Ex. D at Ex. 1). According to Mr. Reardon, Condition 19 was added after he signed and gave a signed copy of the Criminal Judgment to Dr. Kresock. (SOF at ¶ 122; SOF, Ex. D at ¶ 14).

Mr. Reardon has acknowledged that the U.S. District Court Judge is the only person who can add, change, or delete conditions of supervision at the time of sentencing. (SOF, Ex. D at ¶ 18). As such, Mr. Reardon would not, and could not, have added any additional conditions of supervision to the Criminal Judgment. (SOF at ¶ 119; SOF, Ex. D at ¶¶ 18, 20). Further, according to Mr. Reardon, in his nearly 20 years of experience as a probation officer, he has never had someone under his supervision relieved of the obligation to file federal or state tax returns as a

---

[14] Dr. Kresock argues that the Criminal Judgment and/or information pertaining to his prior criminal conviction are inadmissible and/or are being used improperly by other parties, citing Federal Rules of Evidence 404(b) and 609. As an initial note, Dr. Kresock is the party who brought the Criminal Judgment into issue by filing a portion of it with the Court. Further, the Court is not considering the convictions set forth in the Criminal Judgment for purposes of this ruling.

condition of supervision. (SOF at ¶ 120; SOF, Ex. D at ¶¶ 1-2, 19).

Dr. Kresock maintains that he did not edit the Criminal Judgment. (Dkt. 88 at 15). Dr. Kresock asserts that the District Court Judge added Condition 19 to the Criminal Judgment because he allegedly "did not want to monitor" Dr. Kresock's tax issues. (Dkt. 88 at 15-16). Dr. Kresock has not submitted any admissible evidence in support of his position, and there is no amended version of the Criminal Judgment on the district court docket that corroborates Dr. Kresock's statements. (*See* Dkt. 98 at Ex. H).

When asked at the February 2018 Deposition whether he forged the Criminal Judgment, Dr. Kresock invoked his Fifth Amendment right against self-incrimination. (SOF at ¶ 122; Admin. Dkt. 671, Ex. 49 at 10-11).

### 2. Hummer Bill of Sale

After the UST filed the MSJ, the chapter 7 trustee filed a motion to compel Dr. Kresock to, among other things, turn over a vehicle identified as a green Hummer (the "Green Hummer"). (Admin. Dkt. 743). Based on Dr. Kresock's assertion that he acquired the Green Hummer post-petition,[15] the chapter 7 trustee asked Dr. Kresock to produce a copy of the title to the vehicle for verification purposes. (*See* Admin. Dkt. 749; Admin. Dkt. 752).

On December 4, 2019, Dr. Kresock filed a copy of the bill of sale for the Green Hummer with the Court. (Admin. Dkt. 762 at Ex. F). The copy of the bill of sale filed by Dr. Kresock is nearly illegible.

At the hearing on the chapter 7 trustee's motion to compel, Dr. Kresock maintained that the Green Hummer was purchased post-petition, and Dr. Kresock cited the Court to the copy of the bill of sale that he filed in support of his position. (*See* Admin. Dkt. 767 at 33-38).

Because the copy of the bill of sale filed by Dr. Kresock was illegible, counsel for the UST obtained a legible copy of the bill of sale from the dealership that sold the Green Hummer to Dr. Kresock, and filed the legible copy and a declaration attesting to the authenticity of such copy. (Admin. Dkt. 764). This copy of the bill of sale clearly shows that the Green Hummer was

---

[15] Dr. Kresock listed a 2004 Hummer on his amended schedules, but the Green Hummer is not the Hummer that was scheduled.

purchased pre-petition, on February 26, 2011.[16] (Admin. Dkt. 764 at Ex. 3).

**D.    Representations in Documents Filed Under Oath**

Dr. Kresock has filed the following types of documents under oath in his bankruptcy case, among others: (1) his Statement of Financial Affairs ("SOFA"); (2) his Schedules of Assets and Liabilities ("Schedules"); and (3) his Chapter 11 Statement of Current Monthly Income ("CMI Statement").

Dr. Kresock reviewed his SOFA, Schedules, and CMI Statement before they were filed, attested that each document was true and correct, and signed each document under penalty of perjury. (SOF at ¶ 125; *see* Admin. Dkt. 1).

Dr. Kresock's original Schedules, SOFA, and CMI Statement were filed by his counsel, Mr. Giunta, on the Petition Date. (*See* Admin. Dkt. 1).

After the Petition Date, Dr. Kresock filed three amendments to his Schedules (collectively, the "Amended Schedules") and one amended SOFA (the "Amended SOFA"). (SOF at ¶¶ 126-127; Admin. Dkt. 59; Admin. Dkt. 152; Admin. Dkt. 153; Admin. Dkt. 173).

During the § 341 meeting of creditors, Dr. Kresock testified that he believed his schedules, as amended, included everything he owned of value, with the exception of assets legally held in his name but tied up in his divorce proceeding, which potential assets his counsel posited were embedded in a scheduled claim against Dr. Kresock's ex-wife. (Dkt. 140, Ex. 3 at 6-8; *see* SOF at ¶ 176).

Dr. Kresock knew he could further amend his schedules at any time. (*See* Admin. Dkt. 767 at 29).

**1.    False Statements in SOFA & Amended SOFA**

Question number 4 of the SOFA required Dr. Kresock to disclose gross income from operating a business. Dr. Kresock represented in both the original SOFA and Amended SOFA

---

[16] The Court will note that in comparing the version of the bill of sale filed by Dr. Kresock against the version of the bill of sale filed by the UST, it appears that there is a horizontal line at the top of the year component of the sale date in the version of the bill of sale filed by Dr. Kresock that is absent from the copy of the bill of sale furnished by the UST. Thus, although the legible copy of the bill of sale shows that the Green Hummer was purchased pre-petition in 2011, the version of the bill of sale filed by Dr. Kresock would likely lead a reader to believe the purchase date was in 2017, which was post-petition.

that: (1) in the 2014 calendar year, his business had gross income of $181,600.40; (2) in the 2015 calendar year, his business had gross income of $184,400.40; and (3) in the pre-petition portion of the 2016 calendar year, his business had gross income of $54,119.05. (SOF at ¶ 128; Admin. Dkt. 1 at 63-64; Admin. Dkt. 152 at 1-2).

However, IRS Revenue Agent John Schiffer, who conducted an analysis of the CVC's income, determined that Dr. Kresock's actual gross income from operation of his business was in excess of three times the amounts listed in the SOFA and Amended SOFA. (SOF at ¶ 129; *see* Admin. Dkt. 666-5; Admin. Dkt. 669, Ex. 22 at 131-133). Specifically, Mr. Schiffer determined that based on account information furnished by PMSI, the billing service used by Dr. Kresock's medical practice, in the 2014 calendar year, Dr. Kresock's business had gross income of $672,028; in the 2015 calendar year, Dr. Kresock's business had gross income of $593,269.19; and during the first six months of the 2016 calendar year, Dr. Kresock's business had gross income of $229,295.47. (*See* SOF at ¶¶ 133, 135; Admin. Dkt. 666-5; Admin. Dkt. 669, Ex. 22 at 131-133).

Dr. Kresock has acknowledged that he outsourced his business accounting to PMSI, and the Court has already determined that the PMSI account information for the CVC relied upon by Mr. Schiffer is the most reliable source of income information in this case. (SOF at ¶ 134; Dkt. 88 at 8; Admin. Dkt. 701 at 8). Further, Dr. Kresock has not disputed that the income he reported on his SOFA and Amended SOFA is inaccurate. (*See* Dkt. 88).

Question number 13 of the SOFA required Dr. Kresock to list any gifts made with a total value of more than $600 per person within the two years preceding the Petition Date. On both his original SOFA and Amended SOFA, Dr. Kresock checked the box indicating that he had made no such gifts. (SOF at ¶ 138; Admin. Dkt. 1 at 67; Admin. Dkt. 152 at 5).

At the § 341 meeting, Dr. Kresock confirmed under oath that he had not gifted anything with a value of $250 or more to anyone in the 12 months prior to the Petition Date. (Dkt. 140, Ex. 3 at 6).

However, according to the UST, since at least 2010, Dr. Kresock has given $100,000 in gifts each year to Ms. Smith. (SOF at ¶ 139). Dr. Kresock has not disputed this allegation. (*See*

Dkt. 88). Further, Dr. Kresock directed his tax preparer to prepare gift tax returns consistent with $100,000 in annual gifts to Ms. Smith. (Admin. Dkt 666-5 at ¶¶ 20, 27; *see* SOF at ¶ 139).

### 2. False Statements in Schedules & Amended Schedules

On February 20, 2018, Dr. Kresock filed an *Objection to Auction Sale of Personal Property and Vehicles Obtained from 21215 N. 53rd Avenue Glendale, AZ and 7909 E. Obispo Avenue, Mesa, AZ; Motion to Remove Property Belonging to Janine Smith from Property Now Held by an Auctioneer; and Motion for an Interim Report (Trustee's Inventory) Other Than the One Provided by the Auction House* (the "Sale Objection") (Admin. Dkt. 491).

In the Sale Objection, Dr. Kresock objected to the chapter 7 trustee's seizure and/or accounting of the following items of personal property, among others:

- An autographed baseball signed by Reggie Jackson worth anywhere from approximately $100 to several thousand dollars;
- A Rolex Presidential man's watch in the original box with authenticating papers;
- A Pennsylvania Kentucky Rifle (not fireable);
- A full-size leopard skin;
- An Indian Hogan Ladder and collection of Indian blankets;
- A specialty Hummer bicycle;
- Two electric mopeds; and
- An air compressor and accessories.

(Admin. Dkt. 491; *see* SOF at ¶ 149).

Dr. Kresock did not list any of these items in his original Schedules or Amended Schedules, or disclose that he was holding any of these items for another person on his SOFA or Amended SOFA. (*See* Admin. Dkt. 1; Admin. Dkt. 59; Admin. Dkt. 152; Admin. Dkt. 173; SOF at ¶ 150). Further, Dr. Kresock did not allege that any of the above-listed assets were acquired post-petition such that they did not constitute property of the estate.

On May 30, 2018 and July 21, 2018, the chapter 7 trustee filed reports of sale, which reported the sale of, among other assets, a 1994 Ford Aerostar Van for $1,600 and a 1994 Chevrolet G20 Van for $2,100.[17] (SOF at ¶¶ 151, 153; Admin. Dkt. 580; Admin. Dkt. 602). Dr.

---

[17] Dr. Kresock was the purchaser of both vehicles.

Kresock did not list either of these vehicles on his original Schedules or Amended Schedules.[18] (*See* SOF at ¶ 152; Admin. Dkt. 1; Admin. Dkt. 59; Admin. Dkt. 173).

Dr. Kresock has admitted to the Court that it is his position that if he did not disclose a pre-petition asset and/or did not have it titled in his name, it would not become an asset of the estate. (Admin. Dkt. 767 at 48).

During the February 2018 Deposition, in response to the question "did [your bankruptcy counsel] tell you that it's extraordinarily important, extremely important to list all of your property down to the last little item in your bankruptcy schedule," Dr. Kresock invoked his Fifth Amendment right against self-incrimination. (SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 41).

During the February 2018 Deposition, Dr. Kresock was also asked whether he accurately listed all of his assets in his Amended Schedules. (SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 108-109). Dr. Kresock invoked his Fifth Amendment right against self-incrimination in response. (SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 109).

In addition, during the February 2018 Deposition, Dr. Kresock was asked whether he made the $297,372 in loans to the CVC that he reported on his Amended Schedules. (SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 109). In response, Dr. Kresock invoked his Fifth Amendment right against self-incrimination. (SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 109).

### 3. Additional Omissions in Schedules and/or SOFA

Dr. Kresock had no fewer than three accounts at Washington Federal bank, some of which were joint accounts with Ms. Smith, which were open and active as of December 31, 2015, approximately six months before the Petition Date. (SOF at ¶ 143; SOF at Ex. E). The account balances on these accounts in late December 2015 and/or early January 2016 were $172.00, $243.76, and $52.60. (SOF at ¶ 143; SOF at Ex. E; Dkt. 98 at Ex. A-H).

Dr. Kresock did not disclose these accounts either in his original SOFA or Amended SOFA, in which he was required to disclose any financial accounts held in his name that were

---

[18] Although the UST accurately notes that Dr. Kresock also failed to disclose a 2003 Chevrolet Corvette and a 1989 Ford Bronco, Dr. Kresock did list a 2002 Chevrolet Corvette and a 1988 Ford Bronco on his Amended Schedules. (Admin. Dkt. 173 at 8-9). At the summary judgment stage, the Court will infer that Dr. Kresock inadvertently misdated the model year of the vehicles on his Amended Schedules.

closed within the one year preceding the Petition Date, or in his original Schedules or Amended Schedules, in which he was required to disclose open financial accounts. (SOF at ¶ 142; *see* Admin. Dkt. 1; Admin. Dkt. 59; Admin. Dkt. 152; Admin. Dkt. 153; Admin. Dkt. 173).

### 4. CMI Statement

At the February 2018 Deposition, Dr. Kresock also invoked his Fifth Amendment right against self-incrimination in response to the following questions:

- Is [the $9,019.84 amount listed on your CMI Statement] an accurate amount of your average monthly gross wages from January 2016 to June 2016?

- [On your CMI Statement] [y]ou list zero gross receipts as a monthly average [of your net income from operating a business for a six-month average for the six-month pre-petition period from January 2016 to June 2016]; is that an accurate amount?

- [On your CMI Statement] you listed zero ordinary and necessary operating expenses; is that an accurate amount?

- [On your CMI Statement] you also listed net monthly income on that final line here of zero; is that an accurate amount?

(SOF at ¶ 79; Admin. Dkt. 671, Ex. 49 at 108).

## III. <u>Legal Analysis & Conclusions of Law</u>

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), which is incorporated by Federal Rule of Bankruptcy Procedure 7056, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute is "genuine" with respect to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Pursuant to Federal Rule of Civil Procedure 56(c)(1), also incorporated by Federal Rule

of Bankruptcy Procedure 7056:

> A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"Once the moving party meets its initial burden [of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law], the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists." *Nat'l Motor Freight Traffic Ass'n, Inc. v. Superior Fast Freight, Inc. (In re Superior Fast Freight, Inc.)*, 202 B.R. 485, 488 (B.A.P. 9th Cir. 1996) (quoting *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)).

When determining whether to grant or deny a motion for summary judgment, "[t]he [C]ourt need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When a pro se litigant is the party opposing a motion for summary judgment, the Court is not required to search the record for evidence that would create a factual dispute. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). "He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the *pro se* layman . . . ." *Id.* (quoting *Jacobsen v. Filler,* 790 F.2d 1362, 1365 n.5 (9th Cir. 1986)).

That being said, the Court must view the evidence in the light most favorable to and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. at 255, 106 S. Ct. at 2513. Given this, although courts are permitted to draw adverse inferences against a party who has asserted his Fifth Amendment privilege against self-incrimination, the party moving for summary judgment "must still present independent evidence to meet [its] burden on summary judgment." *In re Inflight Newspapers, Inc.*, 423 B.R. 6, 10 (Bankr. E.D.N.Y. 2010). "[T]he burden on the [party moving for summary judgment] to show that there is no genuine issue of material fact remains unaltered by the drawing of the adverse inference." *Id.*

The Court cannot make credibility determinations or weigh evidence at the summary judgment stage, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S. Ct. at 2513, but if a party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him[,]" the Court should not consider it. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007).

The UST has moved the Court to grant summary judgment denying Dr. Kresock a discharge pursuant to §§ 727(a)(3) and 727(a)(4)(A).

The Court recognizes that the principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor[,]" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107, 166 L. Ed. 2d 956 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)), and the discharge of pre-petition debts is the primary mechanism that provides the honest but unfortunate debtor with a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 244, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934); *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992). The exceptions to discharge are therefore strictly construed. *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S. Ct. 287, 289, 59 L. Ed. 717 (1915)). However, being afforded a discharge in bankruptcy is a privilege, not a right. *See United States v. Kras*, 409 U.S. 434, 446-47, 93 S. Ct. 631, 638-39, 34 L. Ed. 2d 626 (1973).

"Summary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent." *In re Wills*, 243 B.R. 58, 65 (B.A.P. 9th Cir. 1999). However, conclusory statements of fact and self-serving declarations are insufficient to create genuine issues of material fact,

*United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989), and "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (cited with approval by *Gertsch v. Johnson & Johnson Fin. Corp (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999)).

## B.    Section 727(a)(3)

The UST argues that the Court should deny Dr. Kresock a discharge pursuant to § 727(a)(3) on the basis that Dr. Kresock: (1) failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained; and (2) falsified the Criminal Judgment and submitted it to this Court in order to conceal his financial condition and business transactions.

Dr. Kresock argues that: (1) third parties maintained his records; (2) he met his § 727(a)(3) burden of keeping and maintaining records; (3) any failure on his part to keep or preserve records is justified given his lack of accounting knowledge and reliance on third-party professionals; and (4) he did not falsify the portion of the Criminal Judgment he submitted to the Court.

Pursuant to § 727(a)(3), a debtor is not entitled to a chapter 7 discharge if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

A party can establish a prima facie case under § 727(a)(3) by showing by a preponderance of the evidence:[19] "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008) (quoting *In re Cox*, 41

---

[19] "Proof by the preponderance of the evidence means that it is sufficient to persuade the [adjudicator] that the proposition is more likely true than not." *In re Cummings*, No. ADV 09-01383-RTB, 2012 WL 4747218, at *8 (B.A.P. 9th Cir. Oct. 3, 2012), *aff'd*, 595 F. App'x 707 (9th Cir. 2015) (quoting *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms),* 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994), *aff'd* 85 F.3d 1415 (9th Cir. 1996), *cert. denied sub nom., Arnold & Baker Farms v. United States,* 519 U.S. 1054 (1997)).

F.3d 1294, 1296 (9th Cir. 1994)). "After showing inadequate or nonexistent records, 'the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records.'" *Id.* (quoting *In re Cox*, 41 F.3d at 1296).

"[T]he purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs[,]" and as such "[c]omplete disclosure is in every case a condition precedent to the granting of the discharge[.]" *Id.* at 761-62 (first citing *In re Cox*, 41 F.3d at 1296, then quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992)).

1. **Debtor's Affirmative Duty to Keep and Preserve Records That Allow Interested Parties to Ascertain Financial Condition and Business Transactions**

Section 727(a)(3) imposes an affirmative duty on debtors to keep and preserve records. *Id.* at 762. In the context of § 727(a)(3), "'[k]eep' means to maintain a record, as in 'to keep a diary.'" *In re Tan*, No. ADV. 00-04199, 2007 WL 7541007, at *12 (B.A.P. 9th Cir. Sept. 28, 2007) (quoting *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999)).

Section 727(a)(3) "does not require absolute completeness in making or keeping records[,]" but does require the debtor to "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *In re Caneva*, 550 F.3d at 761 (first citing, then quoting *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)). The duty that § 727(a)(3) imposes on debtors "is measured by what is necessary to ascertain the [debtor's] financial status." *Moffett v. Union Bank*, 378 F.2d 10, 11 (9th Cir. 1967). "The Code requires that creditors be able to reconstruct a debtor's business transactions and not have to speculate as to the debtor's financial history." *In re Sfadia*, No. ADV. 03-01404-GM, 2007 WL 7540987, at *11 (B.A.P. 9th Cir. Sept. 5, 2007).

When the debtor is sophisticated and engages in a business that involves substantial assets, the debtor's duty to keep and preserve records is greater. *See In re Caneva*, 550 F.3d at 762 (discussing *In re Scott*, 172 F.3d 959 (7th Cir. 1999)). "[W]hen a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete

absence of recorded information related to those entities and transactions establishes a prima facie violation of . . . § 727(a)(3)." *Id.* It is not enough that a debtor under such circumstances produce records pertaining to other aspects of his financial condition. *Id.* at 762-64. "Likewise, . . . when a debtor transfers a substantial amount of money to a third party, the failure to keep any documentation evidencing the terms of the transfer or the fact that the payment actually took place establishes a prima facie violation of . . . § 727(a)(3)." *Id.* at 762.

The burden that § 727(a)(3) imposes on debtors is "an affirmative duty[.]" *Id.* at 764. Thus, "[t]he trustee and creditors are not required to subpoena third parties to get financial information a debtor should have." *In re Artem Koshkalda*, No. ADV 18-03020-HLB, 2020 WL 2730782, at *6 (B.A.P. 9th Cir. May 26, 2020). It is also not enough for a debtor to take a needle in a haystack approach by pointing to boxes of records and leaving it up to creditors or the Court to sift through them. *See In re Caneva*, 550 F.3d at 762. "The disclosure requirement removes the risk to creditors of 'the withholding or concealment of assets by the [debtor] under cover of a chaotic or incomplete set of books or records.'" *Id.* at 761 (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953)).

## 2.    Debtor's Burden to Justify the Failure to Keep or Preserve Records

If a party establishes a prima facie violation of § 727(a)(3), the debtor may nevertheless avoid summary judgment by "presenting evidence sufficient to show that a question of material fact . . . exist[s] as to whether [his] failure [to keep or preserve records] was justified under the circumstances of his case." *Id.* 763.

Whether the debtor was justified in failing to keep or preserve records depends on whether others in like circumstances would ordinarily keep or preserve such records. *Id.* "If the extent and nature of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, [the debtor] must show more than that []he did not comprehend the need for them." *In re Cox*, 41 F.3d at 1297. "In such cases, the justification must indicate that because of unusual circumstances, the debtor was absolved from the duty to maintain records [him]self." *Id.*

Self-serving, conclusory statements that an absence of records is justified are not enough

to avoid summary judgment. *In re Caneva*, 550 F.3d at 763.

### 3.  Legal Analysis

In this case, the UST has asserted two independent bases upon which Dr. Kresock's discharge should be denied pursuant to § 727(a)(3), and the Court will be address each in turn.

### a.  Dr. Kresock's Failure to Keep or Maintain Records

It is clear from the record that Dr. Kresock did not cooperate with creditors or the UST to provide requested documents. The UST, ADOR, and IRS all filed motions to compel Dr. Kresock to provide requested and/or Court-ordered information, all of which were granted by the Court. In total, the Court held no fewer than 7 hearings over a nearly 16-month period to address Dr. Kresock's noncompliance with Court orders and/or requests for production. Further, this Court has already found that Dr. Kresock did not keep good records or substantiate many of his business records.

Moreover, Dr. Kresock is the sole member and manager of the CVC and derives all, or substantially all, of his income from the CVC. Dr. Kresock has admitted that he had the sophistication and forethought to maintain proper documentation of his financial affairs, yet he did not maintain records of the transfers made from the CVC to or on behalf of himself, or from the CVC to or on behalf of Ms. Smith, during the five calendar years preceding the Petition Date. Dr. Kresock clearly had an affirmative duty to keep and maintain records pertaining to these transfers.

Dr. Kresock has submitted no admissible evidence in support of his position that he entrusted third parties to maintain his financial records for him, and the accounting firm that was hired to prepare Dr. Kresock's tax returns has represented that it did not retain any books or records furnished by Dr. Kresock. (Admin. Dkt. 671, Ex. 47 at 20-21, 23, 30). In any event, § 727(a)(3) imposes the affirmative duty to keep and maintain records squarely on the debtor. *In re Caneva*, 550 F.3d at 762.

Because of Dr. Kresock's noncompliance and/or inadequate record keeping, parties in interest were forced to subpoena third parties in order to acquire documents that would allow them to ascertain or attempt to recreate Dr. Kresock's financial dealings. The fact that parties in

interest obtained records by issuing subpoenas to third parties is, however, irrelevant to the Court's determination as to whether the UST has established a prima facie case under § 727(a)(3). *See In re Artem Koshkalda*, 2020 WL 2730782, at *6.

Based upon the foregoing and the record before the Court, the UST has clearly established that Dr. Kresock failed to maintain and preserve adequate records, and that his failure to do so made it impossible for parties to ascertain Dr. Kresock's financial condition and/or material business transactions.

The burden then shifts to Dr. Kresock to show that a question of material fact exists as to whether his failure to keep or preserve records was justified under the circumstances. *In re Caneva*, 550 F.3d at 763.

In support of his position that his actions were justified, Dr. Kresock has only submitted conclusory, self-serving, unsupported statements, and none of Dr. Kresock's assertions suggest that there exist any unusual circumstances which would justify his actions and failures. What Dr. Kresock has presented is insufficient to establish that there exists a genuine issue of material fact precluding summary judgment on the UST's § 727(a)(3) claim. *See In re Caneva*, 550 F.3d at 763; *In re Cox*, 41 F.3d at 1297.

Based upon the foregoing, it is the determination of the Court that the UST is entitled to summary judgment with respect to Count Two of the Complaint, pursuant to § 727(a)(3), on the basis that Dr. Kresock failed to keep or preserve recorded information from which his financial conditions and business transactions might be ascertained, and failed to satisfy his burden of demonstrating that a question of material fact exists as to whether his failure to keep and preserve such information was justified.

### b.   Falsification of the Criminal Judgment

The UST has presented a declaration of Dr. Kresock's probation officer in support of her position that the copy of the Criminal Judgment Dr. Kresock filed with the Court was falsified. Although Dr. Kresock attempted to attack his probation officer's credibility during oral arguments, Dr. Kresock has filed no admissible evidence that controverts the UST's statements of fact pertaining to the Criminal Judgment or controverts the statements set forth in the

underlying declaration of Mr. Reardon. Further, the unsubstantiated version of events that Dr. Kresock recites in his Response, about the judge presiding over his criminal case issuing an amended judgment that adds Condition 19 to the Criminal Judgment, which amended judgment only Dr. Kresock has a copy of, and which amended judgment is not reflected on the district court's docket, is "so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. at 380.

Further, the falsified portion of the Criminal Judgment that was submitted by Dr. Kresock pertains to Dr. Kresock's financial condition and business transactions, and such alteration and falsification could under no reasonable circumstances have been justified.[20]

Based upon the foregoing, it is the determination of the Court that the UST is entitled to summary judgment with respect to Count Two of the Complaint, pursuant to § 727(a)(3), on the basis that Dr. Kresock submitted a falsified version of the Criminal Judgment to the Court and interested parties that, as falsified, purported to impact his financial condition and/or business transactions.

### C. Section 727(a)(4)(A)

The UST argues that the Court should deny Dr. Kresock a discharge pursuant to § 727(a)(4)(A) on the basis that Dr. Kresock knowingly made numerous material false statements and omissions pertaining to his financial affairs with an intent to deceive his creditors, the UST, the chapter 7 trustee, and the Court, and actively tried to conceal the truth from interested parties.

Pursuant to § 727(a)(4)(A), a chapter 7 debtor is not entitled to discharge if he "knowingly and fraudulently, in or in connection with the case, made a false oath or account[.]"

Dr. Kresock argues that the requisite intent does not exist and that he completed his schedules and statements to the best of his ability.

In order to prevail on a § 727(a)(4)(A) claim, "a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made

---

[20] This is not the only time Dr. Kresock has attempted to mislead the Court and interested parties about his financial condition by submitting an illegible and/or falsified document. (*See supra* § II.C.2).

fraudulently.'" *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010) (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005)). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Wills*, 243 B.R. at 63; *see also In re Kluge*, No. ADV 10-03019-BB, 2013 WL 1459274, at *3 (B.A.P. 9th Cir. Apr. 10, 2013). "[T]he opportunity to obtain a fresh start is . . . conditioned upon truthful disclosure." *In re Wills*, 243 B.R. at 63 (quoting *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990)).

### 1. Debtor Must Have Made a False Oath in Connection With Case

"A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007)), *aff'd*, 578 F.3d 1167 (9th Cir. 2009); *see also In re Wills*, 243 B.R. at 62. "A false oath is complete when made." *In re Searles*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

In this case, Dr. Kresock does not dispute that he made false statements and/or omissions on his schedules and/or statements. Further, in the Response, Dr. Kresock seemingly acknowledges that he made false statements and/or omissions on his schedules and/or statements. Specifically, in his Response, he states that he would have needed extensive time in order to prepare his schedules properly and suggests that he could not reasonably have been expected to recall each and every item in each and every one of his houses for purposes of scheduling his assets. (*See* Dkt. 88 at 2 & 18).

Ultimately, there is no dispute that Dr. Kresock omitted the following assets from his Schedules and Amended Schedules, and/or failed to disclose on his SOFA and Amended SOFA that he was holding any of the following items for another person:

- An autographed baseball signed by Reggie Jackson worth anywhere from less than $100 to several thousand dollars;
- A Rolex Presidential man's watch in the original box with authenticating papers;
- A Pennsylvania Kentucky Rifle (not fireable);
- A full-size leopard skin;
- An Indian Hogan Ladder and collection of Indian blankets;

- A specialty Hummer bicycle;
- Two electric mopeds;
- An air compressor and accessories;
- A 1994 Ford Aerostar; and
- A 1994 Chevrolet G20 Van.

Additionally, there can be no genuine dispute that Dr. Kresock significantly understated the CVC's income on his SOFA and Amended SOFA, by more than $490,000 for the 2014 calendar year, by more than $408,000 for the 2015 calendar year, and by more than $175,000 for the 2016 calendar year.

Further, Dr. Kresock does not deny that although he represented on his SOFA and Amended SOFA that he had not given any gifts with a value of more than $600 per person within the two years preceding the Petition Date, he in fact gave his girlfriend $100,000 in gifts each year during this time period.

Given the above, the Court finds that Dr. Kresock made false oaths in connection with this case. The first element of § 727(a)(4)(A) is therefore satisfied.

### 2. The False Oath Must Have Related to a Material Fact

"Materiality is broadly defined." *In re Wills*, 243 B.R. at 62. For purposes of § 727(a)(4)(A), "[a] false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Id.*; *see also In re Truppa*, No. 1:15-AP-01103-MT, 2017 WL 1533381, at *8 (B.A.P. 9th Cir. Apr. 27, 2017) ("The § 727(a)(4)(A) materiality standard is very broad and includes just about any information that has any bearing on the debtor's finances.").

"A false statement or omission that has no impact on a bankruptcy case is not grounds for denial of a discharge under § 727(a)(4)(A)." *In re Wills*, 243 B.R. at 63. However, "[a] false statement or omission may be material even if it does not cause direct financial prejudice to creditors." *Id.* For example, "an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate." *Id.*

In this case, the Court finds that Dr. Kresock's misstatements and omissions related directly to his assets and property, and detrimentally affected the chapter 7 trustee's ability to efficiently administer the estate. Thus, they were material, and the second element of § 727(a)(4)(A) is satisfied.

### 3. The False Oath Must Have Been Made Knowingly

"A debtor 'acts knowingly if he or she acts deliberately and consciously.'" *In re Retz*, 606 F.3d at 1198 (quoting *In re Khalil*, 379 B.R. at 173). A debtor may act knowingly if the debtor "deliberately and consciously signs the schedules and statements declaring that they are true and correct, and subsequently affirms the schedules and statements knowing that they are incomplete." *In re Anthonys*, 539 B.R. 820, 832 (Bankr. D. Alaska 2015).

In this case, Dr. Kresock signed his Schedules, Amended Schedules, SOFA, and Amended SOFA, declaring them to be true and correct, and later affirmed the accuracy of his Schedules and Statements, as amended, under oath at his § 341 meeting. Further, the Court cannot reasonably conclude that Dr. Kresock acted anything less than knowingly given the magnitude of the misstatements and omissions he made pertaining to his business income, the gifts he gave to his girlfriend, and assets, including vehicles and potentially valuable collectables, which collectables Dr. Kresock clearly knew existed given that he disclosed their existence in an objection he filed with the Court. (Admin. Dkt. 491).

Based upon the foregoing, the Court finds that the knowledge element of § 727(a)(4)(A) is satisfied.

### 4. The False Oath Must Have Been Made Fraudulently

For purposes of § 727(a)(4)(A), "[a] debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors." *In re Kluge*, No. ADV 10-03019-BB, 2013 WL 1459274, at *5 (B.A.P. 9th Cir. Apr. 10, 2013); *see also In re Retz*, 606 F.3d at 1198-99.

Intent must be actual, not constructive, but a debtor's fraudulent intent may be, and often is, established by circumstantial evidence and/or by inferences drawn from the debtor's course of conduct. *In re Retz*, 606 F.3d at 1199; *In re Wills*, 243 B.R. at 64.

"Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but are not enough alone to constitute fraudulent intent." *In re Cummings*, 2012 WL 4747218, at *8; *see also In re Retz*, 606 F.3d at 1199. The inclusion of a significant number of falsehoods and omissions in schedules and statements, and the failure of the debtor to correct such falsehoods and omissions by amending his schedules and statements within a reasonable amount of time can constitute reckless indifference to the truth. *See In re Retz*, 606 F.3d at 1199; *see also In re Fink*, 351 B.R. 511, 528 (Bankr. N.D. Ill. 2006) ("While the Court does not expect every individual item of clothing or piece of furniture to be scheduled and valued . . . there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied."). "[A] [d]ebtor's bare denials of fraudulent intent are insufficient to meet his burden to produce admissible evidence that would raise a genuine factual issue concerning his fraudulent intent." *In re Sfadia*, 2007 WL 7540987, at *13.

"Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *In re Retz*, 606 F.3d at 1199 (quoting *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986)). "However, the debtor's reliance must be in good faith." *Id.* (quoting *In re Adeeb*, 787 F.2d at 1343). The advice of counsel is not a defense if what is at issue is erroneous information that should have been evident to the debtor or if it is clear that the property at issue should have been scheduled. *See In re Retz*, 606 F.3d at 1199; *In re Shoemaker*, 2019 WL 2774265, at *15 (quoting *Rita Girl, Inc. v. Mascula (In re Mascula)*, 505 F.2d 274, 277 n.4 (1st Cir. 1974)). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Retz*, 606 F.3d at 1199 (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987)).

In this case, the sheer number of misstatements and omissions in Dr. Kresock's schedules and SOFA, and the monetary value of Dr. Kresock's omitted assets and transfers, together with Dr. Kresock's failure to fully and accurately amend his Schedules and SOFA in the four years that his bankruptcy case has been pending supports a finding of reckless indifference to the truth. *See Retz* at 1199. Further, Dr. Kresock has admitted that he believed that if he did not disclose a pre-petition asset, he could keep it out of his bankruptcy estate. Given this admission, and given

Dr. Kresock's clear knowledge of assets that he failed to disclose on his Schedules and/or SOFA, or the amended versions thereof, Dr. Kresock's actions cannot reasonably be viewed as careless or reckless mistakes. Based on the indisputable record before the Court, Dr. Kresock took actions consistent with his admission in a clear and deliberate attempt to conceal assets and, in effect, defraud creditors.

Dr. Kresock's advice of counsel defense is without merit. Not only has Dr. Kresock not submitted any admissible evidence in support of his advice of counsel defense, but in any event, the advice of counsel is not a defense if what is at issue is erroneous information in schedules or statements that should have been evident to the debtor, or if what is at issue are omitted assets that it is clear should have been scheduled. In this case, the erroneous information and omissions in the Schedules, Amended Schedules, SOFA, and Amended SOFA should have been evident to Dr. Kresock.

Based upon the foregoing, the Court finds that Dr. Kresock acted with fraudulent intent when he made the false oaths discussed above.

Given that all of the § 727(a)(4)(A) elements are satisfied, and given the absence of any genuine issue of material fact, it is the determination of the Court that the UST is entitled to judgment as a matter of law with respect to Count Three of the Complaint.

## IV.  **Conclusion**

In this case, as set forth above, Dr. Kresock has actively attempted to delay and evade creditors, unjustifiably failed to keep and maintain records pertaining to his financial condition and business transactions, submitted a falsified criminal judgment in an attempt to mislead the Court, creditors, and the UST, and knowingly made false oaths with an intent to deceive his creditors and other interested parties. The record reflects that Dr. Kresock, by his own conduct and admissions, is not an honest and unfortunate debtor entitled to a discharge of his debts.

The Court therefore concludes that the UST has met her burden of establishing that she is entitled to judgment as a matter of law with respect to Count Two and Count Three of the Complaint.

Wherefore, based upon the foregoing, upon consideration of the record before the Court,

1   and for good cause shown;

2       **IT IS HEREBY ORDERED** that the United States Trustee's Motion for Summary

3   Judgment is granted. Concurrent herewith, the Court will enter a separate Judgment consistent

4   with this Memorandum Decision.

5       **DATED AND SIGNED ABOVE.**